## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GREENWOOD GROUP, INC.,**<br>**an Oklahoma Corporation,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **v.** | )    **Case No. CIV-24-849-G** <br> ) |
| **L3HARRIS TECHNOLOGIES**<br>**INTEGRATED SYSTEMS, LP,**<br>**a foreign limited partnership,** | ) <br> ) <br> ) <br> ) |
| **Defendant.** | ) |

## <u>ORDER</u>

Now before the Court is a Motion to Dismiss or Transfer (Doc. No. 2) filed by Defendant L3Harris Technologies Integrated Systems, LP.  Plaintiff Greenwood Group, Inc. has responded in opposition (Doc. No. 6).  A Reply (Doc. No. 8) and a Surreply (Doc. No. 17) also have been filed.

### I.    Background

Plaintiff initially filed this action in the District Court of Kay County, Oklahoma. *See* Pet. (Doc. No. 1-2).  On August 19, 2024, Defendant removed the case to this Court on the basis of federal diversity jurisdiction.  *See* Notice of Removal (Doc. No. 1).

Plaintiff is an Oklahoma corporation with its principal place of business in Ponca City, Oklahoma.  Pet. ¶ 1.  Defendant is a limited partnership organized under the laws of Delaware with its principal place of business in Waco, Texas.  *Id.* ¶ 2; Def.'s Discl. (Doc. No. 19) at 1; O'Dwyer Aff. ¶ 6 (Doc. No. 2-1).

Since 2012, Plaintiff, an aerospace supply chain partner, and Defendant, an

aerospace and defense contractor, have entered into approximately 17 agreements whereby Plaintiff would purchase aircraft parts from Defendant. Pet. ¶¶ 4-6. On or about June 27, 2023, the parties entered into Purchase Order 06272023 (the "Contract"), providing that Defendant would deliver certain aircraft parts to Plaintiff. *Id.* ¶¶ 9-10. Pursuant to the Contract, Plaintiff would make an initial payment of $2.1 million, followed by subsequent monthly payments of $200,000, for a total purchase price of $4.1 million. *Id.* ¶ 12.

The Contract required that the parts provided by Defendant "be in serviceable condition," and the parties understood that each part would be accompanied by the requisite documentation that commonly accompanies aircraft parts. *Id.* ¶¶ 6, 13-14. When Defendant's first delivery arrived at Plaintiff's facility on July 6, 2023, Plaintiff found that for many of the parts the requisite documentation was missing. *Id.* ¶¶ 17-18. Plaintiff "brought the missing documentation and other breaches" to Defendant's attention, but Defendant failed to provide the documents or cure the breaches. *Id.* ¶ 19. "[P]eriodically" from July 2023 to January 2024, Plaintiff would receive boxes from Defendant with missing parts and/or documentation, Plaintiff would bring the missing parts and/or documentation to Defendant's attention, and Defendant would fail to timely remedy the issues. *Id.* ¶ 20.

On January 8, 2024, Plaintiff informed Defendant that it would not make the remaining four payments unless Defendant remedied the deficiencies in the earlier shipments. *Id.* ¶ 21. Following failed attempts at communication, Plaintiff represented to Defendant that Defendant needed to resolve all issues by May 15, 2024. *Id.* ¶¶ 23-24. Representatives for Defendant visited Plaintiff's facility on April 29, 2024, to address

2

discrepancies. *Id.* ¶ 25. Since that visit, Defendant "has only been able to provide missing documentation for a few out of the thousands of parts that are missing the necessary documentation" and "has not remedied the numerous parts missing from the deliveries." *Id.* ¶ 26.

At the time Plaintiff filed this lawsuit, Plaintiff had made the initial $2.1 million payment to Defendant, as well as the next six incremental payments of $200,000 ("some well in advance of the payment due date"). *Id.* ¶¶ 15-16. Plaintiff alleges that Defendant's failure to comply with the terms of the Contract has resulted in significant losses to Plaintiff, including direct and consequential damages, and has damaged Plaintiff's credibility with current and future customers. *See id.* ¶¶ 12, 22, 29-30.

Plaintiff brings claims of breach of contract and unjust enrichment under Oklahoma law against Defendant. *See id.* ¶¶ 31-39. Defendant now seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure or, alternatively, transfer of this action to another venue pursuant to 28 U.S.C. § 1404(a). *See* Def.'s Mot. at 4-11.

## II. *Defendant's Motion to Dismiss*

### A. *Relevant Standards*

Citing Rule 12(b)(2), Defendant contends that it is not subject to personal jurisdiction in this Court. When the Court's jurisdiction over a defendant is contested, the plaintiff bears the burden of proving that personal jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). In the preliminary stages of litigation, however, "the plaintiff's burden is light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir.

2008). Where, as here, a court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1056-57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). For purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted as true to the extent they are uncontroverted by the defendant's affidavits. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (internal quotation marks omitted).

To establish personal jurisdiction over a nonresident in a diversity action, a plaintiff "must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the Constitution. *See id.* at 1228-29; Okla. Stat. tit. 12, § 2004(F). As relevant here, the Court's inquiry is reduced to a single question: whether the Court's exercise of jurisdiction over Defendant is consistent with constitutional due process. *See Dental Dynamics*, 946 F.3d at 1229; *Shrader*, 633 F.3d at 1239.

B. Discussion

The due process standard requires that the defendant "purposefully established

minimum contacts within the forum state" and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (internal quotation marks omitted). Depending on the facts, "an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

Here, Defendant challenges Plaintiff's ability to show minimum contacts that would support the exercise of either specific or general jurisdiction.

### 1. *Specific Jurisdiction: Minimum Contacts*

A court may exercise specific jurisdiction over an out-of-state defendant if the plaintiff's lawsuit arises out of the defendant's contacts with the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *see also Goodyear Dunlop Tires Operation v. Brown*, 564 U.S. 915, 919 (2011) (explaining that "[s]pecific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy" (alteration and internal quotation marks omitted)). Thus, to establish minimum contacts for specific jurisdiction, the plaintiff must show: (1) that the defendant "purposefully directed its activities at residents of the forum state"; and (2) that "the plaintiff's injuries . . . [arose] out of the defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 904 (alteration and internal quotation marks omitted). If the plaintiff makes this showing, the court may exercise specific jurisdiction unless the defendant presents a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted).

Defendant argues that the Court lacks specific jurisdiction over it because Defendant has not "purposefully directed its activities" at Oklahoma residents. *See* Def.'s Mot. at 5-7; Def.'s Reply at 5-10. Having evaluated the relevant record in light of the governing authorities, the Court disagrees.

Plaintiff has submitted evidence supporting the proposition that in May 2023 Defendant directly contacted Plaintiff's president, Chris Greenwood, via email to solicit an offer for the relevant aircraft parts. *See* Greenwood Aff. ¶¶ 4-5 (Doc. No. 6-1). Over the next few weeks, Mr. Greenwood and a manager for Defendant exchanged several emails regarding offers for the parts and the condition of those parts. *Id.* ¶ 6. Plaintiff's location in Oklahoma was known to Defendant not only from their course of dealing but from the signature block appearing on Mr. Greenwood's emails. *See* Pl.'s Surreply Ex. 6 (Doc. No. 17-6) at 2.

Further, despite Defendant's broad disclaimer of any "actions that would be considered reaching out . . . into Oklahoma," it is undisputed that in April of 2024, Defendant's representatives visited Plaintiff's Ponca City facility in person to address the parties' contract disputes. Def.'s Mot. at 6; *see* Pet. ¶ 25; Greenwood Aff. ¶ 12. And though Plaintiff often would take delivery of aircraft parts from Defendant at Defendant's facilities in Texas and have the parts shipped to Plaintiff's facility in Oklahoma, Defendant itself "on several occasions" shipped aircraft parts to Plaintiff at Plaintiff's facility in Oklahoma. Greenwood Aff. ¶ 9.

In sum, the allegations and information properly considered by the Court establish that Defendant "deliberately engaged in the conduct from which the contacts" with

Oklahoma "arise," and those contacts "ma[de] it foreseeable to [Defendant] that [it] would be sued in the state where the suit was brought." *Elite Motorsports, LLC v. RLB Constr., Ltd.*, No. CIV-19-901-D, 2020 WL 130145, at *3 (W.D. Okla. Jan. 10, 2020) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). These contacts were not "random, fortuitous, or attenuated," "made with other people affiliated with the state." *Id.* And while the sending of emails, alone, may not be sufficient to establish purposeful availment, the emails here "serve as additional evidence that [Defendant] pursued a business relationship with an Oklahoma business." *Id.* at *4 ("[I]t is the purpose of these contacts in relation to the business relationship that was created, together with the future consequences of the contract, that inform the due process analysis."). In light of the above, Plaintiff has shown that Defendant has established sufficient minimum contacts with Oklahoma to satisfy the requirements of due process.

### 2. *Specific Jurisdiction: Fair Play and Substantial Justice*

Plaintiff having shown that Defendant purposefully directed its activities at residents of Oklahoma and that Plaintiff's injuries arose out of those activities, the Court's exercise of personal jurisdiction may be defeated only by a showing that the exercise of such jurisdiction over a non-resident "would offend traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229. This test is one of "reasonableness," upon which "the defendant bears the burden of proof." *Elite Motorsports*, 2020 WL 130145, at *4.

> The defendant must mount a "compelling case" to show that exercising jurisdiction in his or her case would be unreasonable. The reasonableness component may be defeated if the defendant can show that jurisdiction

somehow violates traditional notions of fair play and substantial justice by showing that it would impose a grave inconvenience.

The Supreme Court has outlined the following "reasonableness factors": (1) the burden on the defendant; (2) interests of the forum state; (3) a plaintiff's interest in obtaining relief; (4) the most efficient resolution of controversies; and, (5) the shared interests of the several States in furthering fundamental substantive social policies.

*Id.* (citations and internal quotation marks omitted).

In this respect, Defendants argue only that "the burden on [Defendant] to litigate in Oklahoma would be substantial given that [Defendant] does not maintain a presence in Kay County, Oklahoma[,] and all of [Defendant's] relevant witnesses and documents necessary to defend in this matter are located in and around Rockwall and Waco, Texas." Def.'s Reply at 10. The Court does not find that this purported burden would be a "grave inconvenience." First, "the majority of the work required in order to mount an effective defense can, with the use of modern technology, be accomplished from [Defendant's] [Texas] offices." *A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*, Case No. CIV-10-422-C, 2010 WL 3081519, at *2 (W.D. Okla. Aug. 6, 2010). Further, Oklahoma has "an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors." *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks omitted). Defendant has not shown that the Court's exercise of jurisdiction over Plaintiff's claims would be unreasonable.

### 3. *General Jurisdiction*

For the reasons outlined above, Defendant's contacts with the forum state are "sufficiently related to the cause of action," and the Court may properly exercise specific

personal jurisdiction over Defendant in this matter. *Old Repub. Ins. Co.*, 877 F.3d at 904. It need not be determined whether general jurisdiction would also lie. *See OMI Holdings*, 149 F.3d at 1090-91 (explaining that the "minimum contacts" standard may be satisfied by showing either general or specific jurisdiction).

III.    *Defendant's Motion to Transfer*

Defendant requests in the alternative that the Court transfer this action to the Western District of Texas, Waco Division, pursuant to 28 U.S.C. § 1404(a).

The relevant statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the provision is to prevent the waste of time, energy, and money, as well as to protect litigants, witnesses, and the public "against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

The assessment of a motion to transfer venue under § 1404(a) involves a two-step inquiry. First, the Court must determine whether the proposed transferee forum is one in which the action "might have been brought." 28 U.S.C. § 1404(a); *see El Dorado Chem. Co. v. Air Liquide Indus. U.S. LP*, No. CIV-14-491-F, 2015 WL 11237486, at *1 (W.D. Okla. Oct. 19, 2015). If so, the Court then has discretion "to adjudicate [the motion] for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks omitted). The Court should consider certain factors, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (internal quotation marks omitted); *see Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). The moving party "bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992) (internal quotation marks omitted). "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Id.* (internal quotation marks omitted).

Defendant does not address whether the case could properly have been brought in the Western District of Texas. Although Defendant emphasizes that its own witnesses and documents will be located in Waco, Texas, Plaintiff represents that its employees, who "inspected and counted the parts" and "identified each missing part and each missing document," are all located in Oklahoma. Pl.'s Resp. at 6. Plaintiff also argues that "the parts and documentation that are the subject of this dispute . . . are being held at its Ponca City facility." Pl.'s Surreply at 5.

"Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966. Accordingly, even assuming the action "might have been brought" in the Western District of Texas, Defendant fails to demonstrate that transfer is warranted. 28 U.S.C. § 1404(a); *see also*

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)

("[P]laintiffs are ordinarily allowed to select whatever forum they consider most

advantageous (consistent with jurisdictional and venue limitations).").

CONCLUSION

In accordance with the above, Defendant's Motion to Dismiss or Transfer (Doc. No.

2) is DENIED.

This case will be set for a status and scheduling conference on the Court's next

available docket.

IT IS SO ORDERED this 24th day of March, 2025.

CHARLES B. GOODWIN
United States District Judge